IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TERRY SMITH, ) | |
| Plaintiff ) | |
| v. ) | No. 3:04-cv-128 |
| BAYER CORPORATION LONG ) TERM DISABILITY PLAN and BAYER CORPORATION, ) | |
| Defendants ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff filed this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, to recover long-term disability (LTD) income and other benefits from defendant Bayer Corporation Long Term Disability Plan (the Plan) [*see* Doc. 1].[1] On July 31, 2006, this court entered a memorandum opinion which held, among other things, that the Plan's rejection of plaintiff's LTD

---

[1]As previously noted by the court [*see* Doc. 29, p.1 n.1], even though the named defendant is "Bayer Corporation Long Term Disability Plan," the name of the Plan is actually "Bayer Corporation Disability Plan." [*See* Administrative Record, p. 051 (hereinafter AR __)]. Once again, to avoid confusion, the page number following the "AR" designation will refer only to the three digit number entered under the caption "BAYER/TERRY SMITH" at the bottom of each page of the Administrative Record.

claim was arbitrary and capricious and directed that plaintiff be awarded those benefits [*see* Doc. 29]. That same day, the Clerk entered a judgment which indicated that plaintiff would be "AWARDED a judgment for his ... LTD[] benefits, plus interest from the date on which the benefit payment ceased, as well as partial disability benefits beginning on May 5, 2004, with the cost of this action to be taxed against defendants." [Doc. 30].

This matter is presently before the court on the following motions filed by plaintiff:

>    (1)    Motion for order of benefits and other damages to be payable by defendants pursuant to the court's order of judgment [Doc. 31]; and
>
>    (2)    Motion for attorney fees [Doc. 33].

The issues raised by these motions have been well briefed by plaintiff [*see* Docs. 32 and 34][2]; however, defendants have failed to file any timely response to these motions,[3] *see* E.D.TN. LR 7.1(a), and are therefore deemed to have waived any opposition to the relief sought. E.D.TN. LR 7.2. For the reasons that follow, plaintiff's motions will be granted.

---

[2]Additionally, the motion for attorney fees is properly supported by the declaration of plaintiff's attorney of record, Eric L. Buchanan [*see* Doc. 35].

[3]Defendants did, however, file a notice of appeal on August 29, 2006 [*see* Doc. 36].

I.

*Procedural Issue*

Before addressing the merits of plaintiff's motions, the court must turn first to the unusual procedural posture of this case which, it must be emphasized, has occurred through no fault of the parties whatsoever. When this court entered its memorandum opinion [Doc. 29] on July 31, 2006, thereby denying defendants' motion for judgment on the ERISA administrative record [Doc. 22] and granting plaintiff's motion for judgment on the record [Doc. 24], it was anticipated that a judgment for a sum certain would be entered. In the context of ERISA cases, it has been the court's experience that oftentimes the parties will tender a proposed agreed judgment for the court's consideration; on other occasions, plaintiff will file a motion for entry of judgment along with a supporting memorandum and affidavit, which is precisely what has occurred in this case.

Before either one of these events transpired, however, the Clerk entered a judgment, presumably pursuant to Fed. R. Civ. P. 58(a)(2)(A). However, that rule provides no mechanism for entry of such a judgment when the court has granted plaintiff relief in this ERISA action; it would, of course, have allowed for the entry of such a judgment had the court granted defendants' motion for judgment on the ERISA administrative record, thereby denying plaintiff's motion for judgment on that

3

same record. *See* Fed. R. Civ. P. 58(a)(2)(A)(iii) ("unless the court orders otherwise, the clerk must, without awaiting the court's direction, promptly prepare, sign and enter the judgment when ... the court denies all relief[.]"). Because the Clerk entered that judgment, it is understandable that defendants filed a notice of appeal even though no judgment for a sum certain has yet been entered. Therefore, in view of the above, this court will vacate the Clerk's judgment and will further order, as it should have done on July 31, 2006, that defendants' motion for judgment on the ERISA administrative record be denied and that plaintiff's motion for judgment on that same record be granted. Once that is done, this court will then have the requisite authority to enter an appropriate judgment so that defendants can then file a notice of appeal from what is truly a final judgment.[4]

II.

***Motion for Order of Benefits and Other Damages***

A.

***Monthly Benefit Amount and the Period for Which It Is Payable***

The record reflects that plaintiff applied for disability benefits under the Plan and that he last worked for Bayer Corporation (Bayer) on or about September

---

[4]The law is, of course, well settled that the filing of a notice of appeal does not deprive this court of jurisdiction to entertain plaintiff's pending motion for attorney fees. *See, e.g., Jankovich v. Bowen*, 868 F.2d 867, 871 (6th Cir. 1989).

3, 2002 [AR 034]. The Plan provides, "LTD benefits begin on the later of: The first day of the 27th week after your disability begins or [t]he first day after short-term disability benefits stop." [AR 098]. Consequently, the first day of the 27th week after plaintiff's disability began was March 10, 2003; however, because plaintiff's STD benefits did not cease until April 2, 2003, his date of entitlement to LTD benefits would have to be April 3, 2003 [AR 045].

The record further reflects that plaintiff was enrolled in the 70% option of the LTD Plan [*see* Doc. 32-2]. That enrollment would entitle plaintiff to 70% of his "[b]ase salary," which is defined in the Plan as "your base annual compensation ...." [AR 093]. In the case of a salesperson, like the plaintiff, the Plan also provides that "your 'base salary' is considered to be your base salary plus commissions earned in the prior calendar year." [*Id.*]. Here, plaintiff's base salary plus commissions for the relevant time period was $60,171.00 or $5,014.25 per month. [*See* Doc. 32-2]. Therefore, plaintiff's gross monthly LTD payment would be 70% of that amount, *i.e.*, $3,509.98.

The record further supports a finding that plaintiff is entitled to the full gross monthly LTD benefit from April 3, 2003, through May 5, 2004, the date on which he began working for Target Stores in Cape Girardeau, Missouri [*see* Doc. 32-3]. After May 5, 2004, plaintiff is entitled to a reduced LTD benefit equal to his gross

5

LTD payment, minus 50% of his income from working while disabled. [AR 099]. The record reflects that plaintiff's earnings at Target are approximately $1,083.33 per month. As 50% of that amount is $541.67, plaintiff's partial disability payment from the Plan would be $2,968.31 ($3,509.98 less $541.67). Plaintiff also contends that these benefits should continue at this level as long as he remains disabled under the terms of the Plan or until age 65. The court agrees [*id.*]. Furthermore, if plaintiff's disability earnings change, then his partial disability benefit should be adjusted accordingly.

B.

*Prejudgment Interest*

Plaintiff next seeks an award of prejudgment interest. "Although ERISA does not mandate the award of prejudgment interest to prevailing plan participants, [the Sixth Circuit has] long recognized that the district court may do so at its discretion in accordance with general equitable principles." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998). An award of prejudgment interest is simply one mechanism to compensate plaintiff for the delay in receipt of his income. *See Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002). Here, as noted above, plaintiff has been deprived of his LTD benefits since April 3, 2003. Because plaintiff has been compelled to undertake a menial job at Target in order to make

ends meet, the court is of the opinion that an award of prejudgment interest in this case is supported by the record.

In determining an appropriate rate of prejudgment interest, the *Caffey* court endorsed the use of a "stream-of-benefits" model, *i.e.*, calculating the interest due on each monthly payment of disability benefits beginning with the date that each payment was due. *Id.* at 585. Thus, *Caffey* endorsed the district court's "use of a blended rate of interest, which averaged the 52-week United States Treasury Bill interest rate over the relevant time period." *Id.* Employing the method endorsed by *Caffey*, plaintiff contends that he is entitled to an interest rate of 2.71%.[5] The court agrees that this is an appropriate rate of prejudgment interest.[6]

In order to apply that rate to the facts of this case, the record indicates first that before plaintiff began his employment at Target, he was entitled to $3,509.98 per month in LTD benefits from April 3, 2003, through May 5, 2004. This represents 13.1 months of LTD benefits totaling $45,980.74 before prejudgment interest is calculated. After interest in the amount of 2.71% is calculated to each

---

[5]Because the sale of the 52-week Treasury Bill has been discontinued, plaintiff relies upon the one-year treasury constant maturities, based on guidance found at http://www.uscourts.gov/postjud/postjud.htm1.

[6]It must be noted that the interest rate utilized by the *Caffey* court was 5.216%. 302 F.3d at 585.

7

monthly benefit as of the date it becomes due, this amount increases, according to plaintiff, to $49,575.13.[7]

The record also indicates that after plaintiff began his employment at Target, he is entitled to $2,968.31 in partial disability benefits from May 5, 2004, through the date of this court's decision on July 31, 2006. This represents 26.87 months of partial disability benefits totaling $79,748.60 before interest is calculated. After interest in the amount of 2.71% is calculated as to each monthly benefit as of the date it became overdue, this amount increases to $82,202.38.[8] Therefore, the total amount owed to plaintiff for total disability and partial disability is $131,777.51 ($49,575.13 plus $82,202.38).

C.

***Postjudgment Interest***

Plaintiff next seeks postjudgment interest. By federal statute, post-judgment interest is allowed on all money judgments. *See* 28 U.S.C. § 1961; *see also Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002)

---

[7]The court did not engage in its own independent calculation of this amount, especially given the fact that defendants have not filed any objection.

[8]Again, the court has not conducted an independent calculation of this amount, given the fact that defendants have not objected.

(applying postjudgment interest statute in ERISA case). Here, the interest rate is 5.17%. 28 U.S.C. § 1961. Postjudgment interest is calculated from the date of the entry of judgment and shall be computed daily until date of payment. *Id.* Consequently, defendant shall include such postjudgment interest when satisfying the judgment in this case.

### D.
### *Other Benefits*

Additionally, plaintiff seeks other benefits pursuant to the following provision of the Plan:

> When you are disabled, you continue to be eligible for other flexible benefits. Your cost for coverage may change from year to year, the same as it does for active employees who are not disabled. With the exception of the Health Care and Dependent Day Care Spending Accounts, any increase in flexible benefits coverage you elect during the annual enrollment will not become effective until you return to active employment.
>
> . . .
>
> When you are disabled, you continue to accrue service under the Bayer Pension Plan; however, you are no longer eligible to contribute to the Bayer Savings Plan.

[AR 101]. Based on the above language, plaintiff requests that he be given the option to elect retroactive coverage and/or coverage going forward in all flexible

9

benefit plans described. Additionally, plaintiff requests that the defendants be ordered to provide a statement of his accrued service in the Bayer Pension Plan, including credit for all time after he became disabled.

Without any input from the defendants, it is difficult for the court to properly evaluate the merits of these requests. The court is especially reluctant to allow plaintiff the option to elect retroactive coverage. Furthermore, some of these benefits seem to be contingent upon an employee returning to active employment - an event which is simply not going to occur in this case.

On the other hand, the court cannot comprehend any harm to the defendants by requiring them to provide a statement of plaintiff's accrued service in the Bayer Pension Plan, including credit for all time after he became disabled. Under these circumstances, that is the only relief which the court will grant with respect to these other benefits.

III.

*Motion for Attorney Fees*

Finally, plaintiff has filed a timely motion for attorney fees, *see* Fed. R. Civ. P. 54(d)(2)(B), pursuant to 29 U.S.C. § 1132(g)(1) of ERISA. In an action by a

plan participant, the district court, in its discretion, "may allow a reasonable attorney's fee and costs of action to either party." *Id.* The Sixth Circuit utilizes the following five factors articulated in *Sec'y of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (per curiam) (commonly called the *"King* factors"):

    (1)    The degree of the opposing party's culpability or bad faith;

    (2)    The opposing party's ability to satisfy an award of attorney's fees;

    (3)    The deterrent effect of an award on other persons under similar circumstances;

    (4)    Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

    (5)    The relative merits of the parties' positions.

*First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005). "Because no single factor is determinative, the court must consider each factor before exercising its discretion." *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998) (citation omitted).

A.

*Degree of Culpability or Bad Faith*

With respect to defendants' bad faith or culpability, this court has already determined that the Plan's rejection of plaintiff's LTD claim was arbitrary and capricious. [Doc. 29, p.40]. In reaching that conclusion, the court was particularly troubled by the fact that the two doctors who actually examined plaintiff found him disabled and the doctors utilized by the Plan - who never examined plaintiff - found otherwise [*id.*]. Moreover, the court concluded that "the reviewing doctors 'cherry-picked' certain parts of [plaintiff's] medical records to support their positions and, in the process, ignored other key portions of the record which indicated that [plaintiff] was truly disabled." [*Id.*]. The court also described the review by defendants' doctors as "inadequate" [*id.* at p.29] and even categorized one doctor's conclusion as "absurd." [*Id.* at p.36]. Nevertheless, it must be emphasized that this court did not find any conflict of interest by Bayer which contributed to an arbitrary and capricious determination by the Plan [*see id.* at pp.25-26].

Based on the above, the court concludes that defendants' conduct does not rise to the level of bad faith; however, it does rise to the level of conduct which is highly culpable. This court found, in effect, that it was unreasonable for the Plan not to require at least one independent psychiatric evaluation of the plaintiff and identified serious deficiencies with those doctors relied upon by the defendants in

12

their consideration of the evidence in this record. At the very least, the Plan is culpable of highly questionable conduct in its review of plaintiff's claim. Consequently, the Plan's culpability is high and this factor weighs in favor of granting fees and costs. *See Hoover*, 290 F.3d at 809 (holding the district court did not abuse its discretion when it found that the plan administrator was highly culpable "since its decision was arbitrary and capricious and based largely on the opinions of the doctors and its claims department.").

B.

***Opposing Party's Ability to Satisfy an Award of Attorney Fees***

The court takes judicial notice of the fact that defendant Bayer is a large, multi-national pharmaceutical company with a nationwide presence. Its capacity to pay an award of attorney fees is not subject to any serious dispute. This factor clearly weighs in favor of plaintiff.

C.

***Deterrent Effect of Award on Other Persons Under Similar Circumstances***

This court is of the opinion that the facts of this case are not so unique that they fail to serve any deterrence value to other insurance companies under similar circumstances. For example, before terminating a plan participant's benefits, a plan administrator should insure that the opinions upon which it relies to make its

decisions to terminate are based on a thorough review of the administrative record. In addition, under certain circumstances, the opining physician's opinion should also be based upon an actual examination of the claimant. Again, in this case, two examining doctors found that plaintiff was disabled; the non-examining doctors found otherwise. The Plan specifically allowed for an examination of the participant; yet, the Plan did not utilize this provision and, in the court's opinion, had it done so, that examination might have mooted this litigation in its entirety.

Therefore, based on the above, this court finds that this factor also weighs in favor of the plaintiff. Hopefully, the decision in this case should deter other insurance companies from making a similar arbitrary decision under similar circumstances, especially when plaintiff is alleging that he is suffering from a number of psychiatric impairments.

D.

***Conferring a Common Benefit on All ERISA Plan Beneficiaries***

This record supports a finding that plaintiff sought only LTD benefits for himself and did not seek to confer a benefit upon all Plan participants. Furthermore, this case does not appear to resolve significant legal questions concerning ERISA. Thus, the court finds this factor does not weigh in plaintiff's favor.

E.

*Relative Merits of the Parties' Positions*

With respect to this factor, the court will reiterate what was set forth in its conclusion in its memorandum opinion:

> In over two decades on the federal bench, this court has rarely awarded a plaintiff ERISA benefits when the court is required to consider a plan's denial of those benefits under the deferential arbitrary and capricious standard. It is indeed an onerous burden for a plaintiff. Nevertheless, after a careful review of the administrative record in this case, the court is constrained to conclude that this is indeed one of those rare cases. In short, as detailed above, the court concludes that the reviewing doctors "cherry-picked" certain parts of Smith's medical records to support their positions and, in the process, ignored other key portions of the record which indicated that Smith was truly disabled. It is also particularly troublesome that the two doctors who actually examined Smith found him disabled, and those who never bothered to do so found otherwise. Under these circumstances, the Plan's rejection of Smith's LTD claim was arbitrary and capricious and an award of those benefits is in order.

[*See* Doc. 29, p.40]. As detailed in the opinion itself, this court found that the Plan relied on inadequate reports and that the Plan "should have ordered at least one - if not several - examinations of Smith under the unusual circumstances of this case before reaching its decision." [*Id.* at p.28]. Not only did this court find plaintiff's position to be superior, but also it found the Plan's decision could not withstand even the most deferential review. This factor too weighs heavily in favor of plaintiff's request for attorney fees.

In sum, after analyzing the five factors as they pertain to the present case, the court finds that four of these factors favor plaintiff. Consequently, an award of fees and costs against the defendants is entirely appropriate.

F.

*Appropriate Period of Time for Attorney Fees*

The ERISA statute allows the court to grant attorney fees "in any action under ERISA." 29 U.S.C. § 1132(g)(1). Plaintiff concedes that he is not entitled to attorney fees for the time spent by his attorney prior to initiating litigation in this court; nevertheless, plaintiff does seek attorney fees beginning on March 18, 2004, the date on which the complaint was filed, and throughout the course of this litigation, including the period of remand while this court maintained jurisdiction. The court agrees that plaintiff's counsel should be compensated for all of this time; however, the period of time representing the remand merits further discussion.

During the course of this litigation, the parties became aware of certain procedural irregularities. Consequently, on October 7, 2004, the parties filed a joint motion for remand for further reconsideration by the Plan Administrator [*see* Doc. 14]. That motion was granted by the court on October 21, 2004 [*see* Doc. 16]. It must be emphasized that the order specifically stated the court "will retain jurisdiction of the case pending the review of the claim by the Plan Administrator." [*Id.*].

Furthermore, during that review, plaintiff's counsel continued to gather evidence to support plaintiff's disability, including the sworn statement of Dr. Robert McCool [*see* AR 197-206], as well as a report by vocational expert Mark Boatner [AR 164-80]. The record reflects that this court relied on both Dr. McCool's statement and Boatner's vocational report in its memorandum opinion [*see* Doc. 29, p.13; *see also* pp.15-17]. When the defendants did not reverse their decision on remand, this case was reopened by order dated November 3, 2005 [*see* Doc. 18].

When a district court remands a claim for further administrative proceedings while retaining jurisdiction over the case in contemplation of making a final decision, the Supreme Court has held that the claimant may receive attorney fees for all the time spent after the litigation commenced, including time spent on "administrative" proceedings during an interim remand subject to a court's jurisdiction. *Sullivan v. Hudson*, 490 U.S. 877, 889 (1989); *Melkonyan v. Sullivan*, 501 U.S. 89, 97 (1991). In *Hudson*, the Court defines a narrow class of administrative proceedings that are "so intimately connected with judicial proceedings" that a court should consider them when determining a fee award. 490 U.S. at 892. The Court describes this class of proceedings as ones in which: (1) a suit has been filed in court; and (2) "where 'a formal complaint within the jurisdiction of a court of law' remains pending and depends for its resolution upon the outcome of the administrative proceedings." *Id.* Similarly, the Sixth Circuit, in determining

that fees are not awardable for time spent before an "action" was initially commenced in an ERISA case, distinguishes cases where fees may be potentially awarded for proceedings that fit the *Hudson* test, *i.e.*, "when the final judgment (or enforcement thereof) in the prevailing party's *suit* depends on the administrative proceedings for which fees are being claimed." *Anderson v. Proctor & Gamble Co.*, 220 F.3d 449, 453 (6th Cir. 2000) (emphasis in original) (citation omitted).

In view of the above authorities, this court concludes that this case falls within the narrow category described by the Supreme Court in *Hudson* and which the Sixth Circuit anticipated applying in the ERISA context in *Anderson*. In other words, this case was also dependent upon the outcome of the administrative proceedings. Moreover, the evidence gathered by plaintiff's counsel during the remand was extremely useful to this court in resolving the ultimate issue before it. Attorney fees are entirely appropriate for the period of time while this claim was on remand.

G.

***Amount of Attorney Fees***

Having determined that an award of attorney fees is appropriate, this court must now set a "reasonable" fee. 29 U.S.C. § 1132(g)(1). The Supreme Court held in *Ensley v. Eckerhart*, 461 U.S. 424 (1983), that the "lodestar method" shall be

applicable in all federal cases in which Congress has authorized a fee shifting award. The lodestar method provides a two-step approach: the basic lodestar figure calculated by determining the reasonable number of hours spent multiplied by a reasonable hourly rate; and the basic lodestar figure may be subject to upward or downward adjustments as warranted by the particular circumstances of the case.

Here, plaintiff requests 121.6 attorney hours to be compensated at a rate of $200 per hour, *i.e.*, $24,320. Plaintiff also claims 31.3 hours or paralegal time to be compensated at a rate of $75 per hour, *i.e.*, $2,347.50. Plaintiff also seeks costs in the amount of $150 for the filing fee to commence this action, *see* Fed. R. Civ. P. 54(d), for a total of $26,667.50.

In support of this request, plaintiff's counsel has filed a comprehensive declaration setting forth each attorney's qualifications as well as a detailed description of the specific service performed, the date on which it was performed, and the amount of time spent undertaking that particular task. The court has carefully reviewed these records and finds that the amount of time spent on this case by plaintiff's counsel is reasonable and necessary. Accordingly, plaintiff's counsel will be awarded the full amount of fees and costs sought.

IV.

## *Conclusion*

For the reasons foregoing, the court will enter two orders simultaneously, one addressing the procedural issues raised in this opinion and the other granting the pending motions filed by plaintiff to the extent previously identified.

Order accordingly.

***s/ James H. Jarvis***
UNITED STATES DISTRICT JUDGE
